Case number 21-5257, FAA, Inc. and Paul Hudson, Appellants, v. Federal Aviation Administration. Mr. Sandler for the appellants, Mr. Hammond for the appellee. Good morning, counsel. Mr. Sandler, please proceed when you're ready. Thank you, Chief Judge, and may it please the Court. It is difficult to imagine a case in which the fundamental purposes of the Freedom of Information Act would be implicated to a greater extent than in this one. Two fatal crashes of the Boeing 737 MAX aircraft cost 346 lives. The original decision by the Federal Aviation Administration to certify that aircraft as safe was manifestly flawed, and numerous official reports and studies showed that that original process was corrupted by conflicts of interest and a culture of secrecy. After grounding the aircraft in March 2019, Boeing submitted numerous proposed fixes and modifications to the aircraft design, and in November 2020, the agency ungrounded the aircraft, found it fit and safe to operate based on Boeing's proposed design changes. Flyers Rights has been trying through its FOIA requests to get the FAA simply to reveal the basis for that, a full factual basis for that decision, specifically the certification plan setting out the steps that Boeing was going to take to show compliance, testing methods, flight test plans, the results of those tests, and safety analyses. The record before the District Court included the declarations of seven independent experts, unrebutted by the FAA, that without access to those categories of documents, it would not be possible, it is not possible to determine whether the fixes submitted by Boeing and relied upon by the FAA actually made this aircraft safe to fly. The District Court accepted the FAA's claims that all of this information was Boeing, confidential commercial information shielded from public scrutiny, under Exemption 4. And we submitted this- Can I just ask you, you're not contesting that it's confidential, right? We do not contest- You're not contesting that. Correct. Correct, okay. So your argument is that through these public statements, the FAA put Boeing on notice, it would be making them public, right? There are several arguments- Well, that's one of them, right? Right, one of the- So what in those statements, there's four by the FAA commissioner or administrator before Congress, and then there's two Boeing statements by the CEO, right? The transparency statements. So we think that in this case, the state, we're not drawing on a blank state here. My question is, what could you point to in those, start with the FAA statements, the four FAA statements that, I know they call for, the agency is calling for transparency, but what in those statements suggests that that specifically includes, or would put Boeing on notice that its documents would be released public? The pledges of transparency were not made generally about agency policy. It was specifically about the ungrounding and recertification process, and they were- Right, about the 737 acts. About the- But what about the documents? What in the statements would put Boeing on notice that these compliance materials would be released? The pledge was that there would be full transparency with respect to the recertification process for this aircraft, and it's clear that those statements were deliberately made to draw a contrast with the original flawed certification process, and what's a fundamental issue is Boeing's withholding of information from the agency and airline pilots in the public. In fact, Boeing admitted to a criminal conspiracy to withhold information and deceive the agency. We submitted, in addition to the fact that the unrebutted expert testimony that without this information, the public couldn't determine whether the FAA's decisions- That's not the question before us, right? Even if you're right that without that information, the public couldn't determine, couldn't assess it, that's not the question in a FOIA case. The question in the FOIA case, in the way you've set it up, since you've conceded they're confidential, is what in the record suggests that the agency put Boeing on notice that the specific information you seek would be public? Exactly. Even if conceding that the public couldn't effectively analyze the effectiveness of the FAA decision without it, there still has to be evidence, correct, that the FAA put Boeing on notice that these materials would be made public? Exactly. The question is what in this record did they? The statements that we cite, well, because transparency, the Pledge of Transparency, specifically with respect to this recertification process, would be meaningless unless these categories of documents are at least resubmitted. Well, see, you're back to arguing the wrong point now. It can't be that it loses their confidentiality because, at least I don't think it could be, that they lose their confidentiality because the public couldn't accurately assess the effectiveness of the agency without them. We still have to answer the question, where did the FAA say that these, or put Boeing on notice, that these materials would be public? You agree that's the question, right? Right. Basically, the fact that the specificity of the pledges they made with transparency, combined with the fact that those pledges would be meaningless without disclosures of these documents, would have, we believe, meant that Boeing was reasonably put on notice. We submitted a declaration from experts on that point, to one of whom was a former Boeing engineer, said that, quotes in his declaration in this record, Boeing would have clearly understood that the FAA could not meet its commitment to transparency without making these categories of information publicly available, end quotes. Somebody who had years of experience with Boeing, again, unrebutted on this record. Some of the other issues raised here, 80 pages of the documents in this case that were withheld, were FAA's own comments about Boeing's submissions, about its proposed fixes. We submit those were not obtained from a person, quotes, within the meaning of Exemption 4, because the government created those comments, not Boeing. The district court allowed the agency to withhold those because some confidential commercial information could be extrapolated from those comments. But we would submit that's kind of a standard with no limit. At some point, the FAA must have said, this is our view, this is our reaction, and if you can never get that from the agency because you can sort of reverse, somehow reverse engineer the confidential information, it would, in a lot of contexts, get out of the act. I'm looking at the FAA's declaration. It says specifically that these comments nonetheless reveal proprietary information, which was only provided to FAA by Boeing. That's what the affidavits say. That's what the FAA says, but it's inherently not logical that you can, nothing that the government said about the Boeing's fixes. It sounds like what you want us to do is look at the documents. Is that what you want? I mean, we don't normally do that. I don't know. We have a sworn affidavit here from an agency. It's pretty specific. And, in fact, I mean, it's pretty specific. It's much more specific than in other cases. And I don't know, and the agencies are entitled to a presumption that these affidavits are accurate. So I don't know how we can pierce what she says. Well, the FOIA requesters are always at a fundamental disadvantage. Yeah, right. That's the problem with the statute. I agree. That's inherent in every FOIA case. We always have a precise problem. You're at a disadvantage because you don't see the documents, and we haven't seen the documents. And all we have is a declaration to go on. So we have a whole bunch of cases that tell us, you know, that all we require is that the declarations be sufficiently specific and rational. And I don't see where you've, in the record, contested any. Other than to say it just can't be. Well, right. It's inherently not logical. That doesn't make any sense. Every word of that government comment reveals commercial information about the design of the aircraft. Oh, hold on. Can we just hold one second? Because we've lost opposing counsel on our Zoom feed. He can hear. Can you hear me? Yes. I can see you. And you can hear what's going on. I can both see and hear you. I've seen myself on the Zoom feed. But I guess you guys cannot see me. Please continue. Thanks. I'll sit whatever time I have. I had a quick question. You raised the secret law argument, which normally comes up in Exemption 5. Excuse me. How does the secret law argument work in Exemption 4? It hasn't been used there before. So how do you conceptualize how it works here? Even though the secret law argument was developed and has been addressed only in the context of Exemption 5, it is what the Supreme Court made clear in this year's Roebuck case is that FOIA itself, leaving aside Exemption 5, requires the disclosure of interpretations and agency statements that effectively embody the agency's effective law and policy. And what we're saying here is that when the FAA allows Boeing to make up its own test to show how they comply with the FAA's requirements and then claim those tests can be kept secret because the tests themselves are proprietary, we're talking about keeping secret agency policy, agency effective law and policy. It affects the rights of Boeing. It affects the rights of the public. I think we would all have loved it if for the bar exam we could say I'll make up my own test, you know, and then I'll take it. And guess what? I passed it. I mean, it affects my rights. It affects the rights of the test taker and also the rights of the public that this lawyer is going to serve. That's why we submit its effective law. Thank you, Mr. Sandler. We'll give you some time for rebuttal. Mr. Hammond, we'll hear from you now. Good morning, and may it please the Court. Derek Hammond on behalf of the Appley, the Federal Aviation Administration. The question posed by this appeal is the extent to which third parties who submit information to the government can expect the government to maintain the confidentiality of the privately held commercial or financial information. In this case, we consider the confidential commercial information that Boeing Company submitted to the FAA in connection with the certification of a design change to a 737 MAX aircraft. Under FOIA Exemption 4, the government may properly withhold information if it is, one, obtained from a person, two, commercial or financial in nature, and is, three, confidential. Appellant's primary contention takes aim at this third criterion, whether the information at issue can be deemed confidential. As counsel admitted in this case, though, there is no dispute about the confidentiality of the information. It is under Argus Leader information that Boeing actually and customarily treated as confidential and had been provided assurances of express and implicit assurances of confidentiality when it provided that information to the government. The only dispute in this regard is whether statements by FAA officials undid this confidentiality by vague and amorphous commitments to transparency. But none of these statements expressly vowed to release any of Boeing's otherwise confidential information. Rather, these statements in some substance reflect a commitment to work with the independent review bodies that were evaluating the issues that had arisen in connection with the aircraft and to the general concept of greater transparency in the certification process. Nothing in these statements, however, would have reasonably alerted Boeing that the FAA was departing from its decades-long historical treatment of its confidential information. And particularly here, where we are talking about the relinquishment of sensitive confidential commercial information owned not by the government but by a third party, the bar should be especially high so as to safeguard that information from the intolerable result that such information will be divulged without the third party having a reasonable opportunity to ensure its protection. Because all of the information in this case was confidential commercial information obtained from Boeing, we respectfully request that this court affirm the judgment below. I'm happy to entertain any questions. I just have one question. You know, the briefs, the parties talk about the regulations that are at issue here, but could you just tell us quickly what regulations are we talking about here? And do they include or incorporate by reference means of compliance? Yes, Your Honor. The regulations talk about the need to have a means of compliance to demonstrate that a design element meets the regulatory standard. My understanding is that the regulatory requirements are found in 14 CFR Parts 21, 39, and 183. And you're telling us all they do is set standards. They don't specify means of compliance either within the body of the regulations or by incorporation. You know, there's so many agency regulations that set standards and then incorporate private standards as means of compliance. Is that not this case? Correct, Your Honor. My understanding is that the regulations applicable in this case did not have any specific requirement that Boeing show compliance through any particular means. There are, my understanding is that there are a set of publicly available means of compliance that parties may elect to use, but they're not required to do so. And Boeing did not do that here. All of the means of compliance that we're dealing with were proprietary information developed by Boeing for the specific purpose. I wanted to ask you about two documents in particular. One is Document 45. One is Document 50. Where the Vaughn Index description there says, and the document is described as, the first 45 is a comments list from FAA, from the FAA. They're questions and comments. And the basis for withholding is FAA says we withhold this record because it contains technical comments and Boeing responses. And then after that it just says Boeing objects, Boeing notes, Boeing further notes. It never says the FAA, which is the one that's supposed to comply with FOIA here, agrees that those things will happen. And it just describes Boeing's objections. And we've never said that technical comments alone are going to be sufficient for withholding, right? You need to make the assertions about things being intertwined. And in the Gulf and Western case, the Vaughn Index was much more, it didn't just say technical information, it identified the categories of technical information, gave a lot more information. But the only explanation we have for 45 and again for 50 is FAA comments and Boeing responses. FAA withholds it because it's technical. And then it just describes Boeing's arguments. Is there any case where we have held that a Vaughn Index description like that is sufficient? I don't know of a specific case like that. I would also point the court to the declaration as well that should be read in conjunction with the Vaughn Index. First of all, at JA 242, paragraph 45 of the first Kaebler declaration. Hang on, let me catch up to you. The first Kaebler one, which paragraph? Paragraph 45. Starting in the middle of the paragraph, it describes that as required, the FAA made its own determination as to whether Exemption 4 applied to each withheld document or redacted portions of documents. The Aircraft Certification Service's FOIA coordinator and subject matter experts determined that the vast majority of Boeing's objections were valid. However, in circumstances where the Aircraft Certification Service disagreed with these objections, the FOIA coordinator identified the disputed redactions to Boeing. In each instance, after consultation with Boeing, Boeing agreed to withdraw the disputed objections, and the material was released to Flyers Rights. The Aircraft Certification Service segregated and disclosed any information not covered by a FOIA exemption that could reasonably be segregated out and released. That's incredibly general language. There's also more information about what these specific documents entail, if you bear with me for one moment. Mm-hmm. Paragraph 37 of the declaration, which appears on JA-239, and I believe, yeah, that gives more information as well about the rationale for withholding those documents. It describes that these pages consisted of charts, which provided FAA's comments to earlier versions of the project deliverables to which they were attached. Note Boeing's position with respect to those comments, and summarize changes that Boeing made to accommodate FAA's comments. With respect to the remaining eight, and then it goes on to describe the other items. All right, but there's nothing, again, there's nothing, both in Western, there was sort of details about, I mean, real granular details about, without revealing things, but much more just sort of labeling things technical, and, you know, it doesn't even say here they're intertwined, it just describes it as this thing and that thing and the other thing, FAA, Boeing, FAA. Well, it does. Here, and it doesn't in the Vaughn Index, and it seems to just characterize what Boeing said. Why is that? I guess. Why shouldn't the Vaughn Index show, I'm sorry, I'll just try to finish this thought for you, sorry. No, no, no, I'm breaking up myself here. So, the, why isn't it the job of FAA in its Vaughn Index to say, not just technical information, but this was about, these were, you know, 12 comments about the MCAS system, six about brakes, whatever piece you want to, you know, wheels, something, engines, whatever, and in the Vaughn Index say they were intertwined, and can't be released. I don't understand why the Vaughn Index is just supposed to, the FAA says it's technical, and here's Boeing's objections, and then we look at this paragraph here, which is at a very, I take it all as true, but it says it at a very, very 40,000 foot level of what was going on on these documents. So, the question is, why isn't a more granular description of one reflecting the FAA's judgment about what these documents would reveal, not Boeing's, what Vaughn requires? Well, Your Honor, respectfully, I believe that the Vaughn in conjunction with the declaration, and I guess the more pertinent provision that I should have pointed you to earlier is on JA244, so it's kind of spread out across the declaration. At paragraph 51, it describes that although this kind of technical information is incorporated into FAA authored comments, these comments nevertheless reveal proprietary information originally provided to FAA by Boeing. I think – But that's about, I think that's about documents 41 and 83, not 45 and 50. But 45 and 50 is above that in the same paragraph. The sentence says these charts contained, well, first of all, isn't that right that the sentence you just referenced refers to documents 41 and 83 rather than 45 and 50? I don't know that that's correct, Your Honor. I interpreted this as applying to all of the – because both of these reflect FAA comments. But it's right after a sentence that says of the eight pages produced with redactions, the FAA redacted only that information that originated with Boeing. I thought that the eight pages produced with redactions referred to 41 and 83. That's 45 and 50 were withheld in their entirety. But maybe my impression's wrong. Right. It could be read that way, Your Honor. Well, I don't know what you mean by it could be read that way. It's exactly what it says. And if the eight pages – isn't it true that eight pages produced with redactions only refers to 41 and 83? That can't refer to 45 and 50 because 45 and 50 were withheld in their entirety. That's true, but all of these pages deal with FAA comments, incorporate FAA comments. I just assumed that the last sentence when it said these comments nonetheless reveal proprietary information was talking about the sentence that came right before it. But you still have sentences before that, and I have a question about that. Earlier in paragraph 51, in particular reference to documents 45 and 50, there's a sentence that says, these charts contain FAA comments to Boeing's project deliverables, which in themselves would reveal technical data and Boeing's proprietary methods of compliance if released. Charts also provided Boeing's comments in response to the FAA's comments, identifying actions Boeing took to address the FAA's comments. That refers to 45 and 50. Yes, you're correct, Your Honor. My apologies. And then on the part that says, which in themselves would reveal technical data and Boeing's proprietary methods of compliance if released, without getting to the level of generality at which that is with the point made by Judge Millett, I just want to make sure that when it says which in themselves, that's talking about FAA's comments. That's correct. It's not because it's a little, it says these charts contained FAA's comments to Boeing's project deliverables, which in themselves would reveal, which I guess the question is whether that which in themselves refers to the FAA's comments, or does it refer to Boeing's project deliverables? I read it to refer to FAA's comments. Yes, that's correct, Your Honor. It refers to the FAA comments. Okay. But what about the technical data? Why is that? Again, in Gulf and Western, right, we were able to list the types of technical data. Scrap rates, break-even point calculations, actual cost data, right? It wasn't just simply saying it's technical. We can't talk about it. Because there's probably a lot of technical things about these airplanes that are also going to be known to the public, known to these countless other people outside Boeing and the FAA, especially given all of the studies and reports that were done on this. And so why is just saying it would reveal technical data? I get your proprietary methods, but it seems to draw a distinction between technical data and proprietary methods. Well, the only technical data that was withheld also was, I mean, was that which is maintaining confidence, not technical data that was otherwise known to the public. So all the technical data is proprietary. Are you just saying the methods of compliance are proprietary and the technical data is also proprietary? All of that was withheld. It just reads. And so after Gulf and Western, we're not going to require any more. It's just enough for an agency to say it was technical data. And so, therefore, it's privileged. Well, I mean, there's more to it than just saying. Is that the outside of the airplane that anybody walking by can see? Yeah. Where are the engines located? How high off the ground are the engines? That's technical data. Yes, but they're not withholding information that is otherwise known to the public. And I think that's what the declarations in this case speak to, you know, that they did undertake an effort to segregate out any information that is not covered by Exemption 4. Is the technical data, and I just want to make sure I get the response to Judge Millett's question, is the technical data proprietary information? Yeah. Yes, it is, because it deals with the technical details, the technical specifications that Boeing, not only technical specifications, but also I think perhaps I don't know specifically in this instance, but all of the data that we're talking about here generally deals with the technical specifications of the aircraft or information that could lead someone to discern that technical information. And that is information which is proprietary and held by Boeing and Confident. There's a problem here that we're adding words into this declaration, writing words to the Vaughn Index in the declaration that aren't there. Is that a problem? I'm sorry. Which words are you? Proprietary technical data, undisclosed technical data, nonpublic technical data, because, you know, one of the issues was the location of the engines, which, you know, is technical data for sure. And people can tell that by looking at the outside of the airplane. I can't imagine that's still considered proprietary. It's just what I worry about. I'm sorry, just to lay on the line, and I apologize for interrupting you. What I worry about is sort of cookie cutter language in Vaughn Indices and declarations, and that doesn't contain the type of detailed information our prior cases like Gulf and Western have had. And so we're slipping on this. And so then there's really no way to make sure that people dealing with a lot of information, very busy people have looked at these things with the rigor that's needed. If they haven't sworn declarations that say exactly what they want, what we now want to assume that they meant. Sure. The one other point I guess I would mention is that these documents, I mean, the one document I think is 78 pages long. It's quite sprawling and covers, and I believe it covers quite a bit of material. But obviously that's not in the record, but, you know, just to provide maybe a little more context here. And I don't know, I mean, the case, sorry, I think the case law requires, you know, for them to reasonably describe the information without revealing the information. And in some cases I don't know how they would describe what the technical information is without perhaps revealing what the technical information is or what the proprietary information is. Should we know that was the problem here, that they couldn't say anything more? They couldn't say, as they did in describing Bowen's, Bowen's response, you know, in the beginning that these were about, Bowen says it's going to be about MCAS, I hope I'm, MCAS or whatever you call it, speed trim lights, that's all, right? They don't give, Bowen will say that, but we're not, the FAA just puts slaps on the label technical information. It feels to me like this case would be to rely just on the fact they said technical information. And they haven't said we can't be any more specific if they didn't say that. And so we're moving our case law one step further in the direction of less information in VON indexes and declarations. Now maybe there's a good reason in this case that's your position, but we're certainly moving the law one step further to even less information being disclosed and less ability on the parts of courts to ensure without requiring in-camera review every time there's a FOIA case to ensure that, in fact, everything's been disclosed that can be disclosed. Yeah, I take your point, Your Honor. I do think the trick, as I mentioned, in every FOIA case, to be honest, is how do you describe the efforts to segregate information and why no more information can be disclosed? Because they do that here. But how do you do that without revealing what the information is? And doing that on a reasonable level, right? You don't have to, you know, reveal information that is nonsensical or meaningless in that effort. You know, that would just entail too much agency resources and it's not reasonable. Can I ask one question that ties this, maybe ties some of this together? On paragraph 67, page 249, the declaration says this is dealing with segregability. But, Howard, the majority of the pages of responsive records have been withheld in full. As explained more fully above in section 2 of this declaration, the withheld documents consist almost entirely of Boeing's proprietary technical data and the proprietary methods of compliance. Does that mean that the technical data that was referenced earlier is proprietary? Yes. I mean, that's what they're, that is what I mean when I say that they are only releasing, they are only withholding the proprietary technical data, the confidential technical data, and items that are already publicly known are not being, you know, would have been disclosed. That was part of a segregability discussion and there was no segregation of information at all for these documents. It was a total withholding. For these charts. We shouldn't take anything of the fact they didn't call it proprietary technical data here. That they did in the Vaughn Index for these specific charts? Where they weren't undergoing a segregation process, right? Yeah, I mean. Because there was no redaction. Right. I mean, they attempted to segregate to the extent that they could. And if information, like they said, they did a line-by-line review. And to the extent that information could have been disclosed, they would have done that. So how would we write an opinion that would, or can you tell us, or maybe you can point us to something in the declarations that would say, that would assure us that any more, anything beyond using the phrase technical data, would itself reveal? Because there's lots of times that there are references to categories of technical data throughout these documents. But for these documents, how do we know they couldn't have said anything more than technical data without revealing? That seemed, if I understood your argument correctly, that seemed to be your concern. And we are in a highly technical area here. I get that. How do we know, or what's the best part of the declaration? Maybe it's the part that Chief Judge Van Vossen just read that even saying anything beyond technical data, even giving sort of categories, this involved the MCAS system. This involved the engine location or size. This involved, you know, redundant protective measures in the engineering system or electrical system. How do we know they couldn't say anything more? I think paragraph 67 is the best evidence that that's true. Okay, thank you. Thank you, Your Honor. Thank you, counsel. Mr. Sandler, I'll give you two minutes for rebuttal. Thank you, Your Honor. A couple of points on this. With respect to this issue of the documents that the judge and the chief judge were referring to, so it's clear, it's correct, nothing was disclosed about those charts. In the Gulf and Western case, the court held that specific cost numbers, cost calculations that were quoted in the documents at issue could be withheld, could extrapolate it because they were quoted in that, in those documents. We are not seeking to hear the technical, the actual technical proprietary information. In that chart, there would be a column that says, Boeing says, here's our design that we're submitting. The FAA's comments would have to say something like, yeah, this didn't work because the pilot still couldn't do X, or that, you know, this thing still couldn't be operated. That's not the idea that you can extrapolate technical information from that. It's got, again, that's why we suggest, again, the disadvantage of not knowing anything, the details of the documents. It doesn't make sense that 100% of FAA's own comments, that column in the chart, this is our view, this is what we found wrong, reveals the, you know, patented or proprietary, probably disclosed, the proprietary design of the aircraft fixes that they're submitting. And then just to Judge Tatel's question about the regulations, the regulations basically allow but do not require the manufacturer to use publicly available means of compliance. Instead, again, they allow the manufacturer to make up its own test. By contrast with regulations, say, for the Food and Drug Administration that say, here's the criteria for the test that you have to follow in order to improve your drug safety. Thank you. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Millett, Tatel